**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

MELINDA A. P.,[1]
    Plaintiff,

        v.                                                  Civil No. 3:20-cv-00959 (HEH)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). Plaintiff, at the time of her alleged onset date, was a fifty-one-year-old who formally worked in IT support and suffers from a series of strokes, asthma, and anemia. (R. at 174, 198-99.) Plaintiff contends that her impairments render her unable to work. (R. at 198.)

On April 1, 2020, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits and supplemental security income. (R. at 10-24.) This matter comes before the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

1

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erred in evaluating the opinion of Nancy Powell, M.D. ("Dr. Powell") (Pl.'s Br. in Supp. of Mot. For Summ. J. 5, ECF No. 20 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 19) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on May 7, 2018, alleging disability beginning April 11, 2018. (R. at 172.) The Social Security Administration ("SSA") denied Plaintiff's claim and again upon reconsideration. (R. at 72-89, 94-119.) Plaintiff requested a hearing before an ALJ, and a hearing was held on February 26, 2020. (R. at 35-53, 147.) On April 1, 2020, the ALJ signed a written opinion denying Plaintiff's claim and concluding that Plaintiff was not disabled. (R. at 10-24.) On April 23, 2020, Plaintiff requested review of the ALJ's decision. (R. at 4.) On October 14, 2020, the SSA Appeals Council denied Plaintiff's request and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence, and it includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does

not support an ALJ's determination or if an ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

SSA regulations set forth a five-step process that an ALJ employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, an ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, an ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires an ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, an ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.925(a).

At step four, an ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 404.1520(e), 416.920(e). However, if the claimant can perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. THE ALJ'S DECISION

On April 1, 2020, the ALJ issued a written opinion, finding that Plaintiff was not disabled under the Act. (R. at 10-24.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 11-23); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 636 (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 11, 2018. (R. at 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "ischemic stroke, neurocognitive disorder, asthma." (R. at 12.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-15.)

The ALJ determined Plaintiff's residual functional capacity based on an evaluation of the entire record. (R. at 15-24.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that walking should be limited to 20 minute increments; she should no more than frequently balance and no more than occasionally climb, stoop, kneel, crouch, and crawl; she is limited to frequent reaching and handling on the right (dominant) side and occasionally fingering on the right dominant side; and she should have no exposure to dust, fumes, pulmonary irritants or hazards such as unprotected heights and moving mechanical parts. The [Plaintiff] can understand, remember and carry out simple instructions and make simple work related decisions; can work at a consistent pace throughout the workday but not at a production rate where tasks must be performed quickly; and can tolerate occasional changes in routine work settings and procedures.

(R. at 15.) The ALJ explained that she determined Plaintiff's residual functional capacity after summarizing the evidence in the record and finding that the objective medical findings in the record did not support Plaintiff's claimed levels of severity. (R. at 15-22.)

Relevant to this case, the ALJ evaluated a medical opinion from Dr. Powell when determining Plaintiff's residual functional capacity. Dr. Powell examined Plaintiff on April 9, 2019. (R. at 464-70.) Dr. Powell opined that Plaintiff would be able to stand or walk six of the eight-hours in a workday with frequent breaks due to her asthma, and she would be able to sit six hours of the workday. (R. at 467.) Dr. Powell also opined that Plaintiff would be able to lift and carry ten pounds frequently and twenty pounds occasionally and that Plaintiff required no environmental limitations. (R. at 468.)

The ALJ held that Dr. Powell's opinion had "some persuasiveness." (R. at 21.) The ALJ reasoned that, although her opinion was "generally supported by Dr. Powell's own findings and observations," it is "not completely consistent with the overall record." (R. at 21.) The ALJ pointed to a June 2018 examination of Plaintiff, which note "generally unremarkable" findings, such as "lungs clear to auscultation without wheezes, rales or rhonchi," "no focal neurological findings or movement disorder," and "5/5 strength in the bilateral upper extremities." (R. at 21.) The ALJ further noted that, though Dr. Powell recommended no environmental limitations, the record supported such limitations because Plaintiff sought emergency department treatment at least twice for environmentally triggered asthma exacerbations. (R. at 21.)

Based on the above residual functional capacity determination, the ALJ concluded at step four that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 22.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 22-23.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of occupations such as router and classifier. (R. at 22-23.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 23.) Therefore, the ALJ determined that Plaintiff was not disabled. (R. at 23-24.)

## IV. ANALYSIS

The parties' arguments raise two specific issues. First, did the ALJ err in evaluating Dr. Powell's medical opinion? (Pl.'s Mem. at 5-8.) Second, if the ALJ erred, is such error harmless? (Def.'s Mem. at 14; Pl.'s Reply to Def.'s Mot. For Summ. J. 3, ECF No. 25 ("Pl.'s Reply Br.").) This Court concludes that: (1) the ALJ erred in evaluating Dr. Powell's medical opinion by failing to adequately explain the persuasiveness given to the opinion; and (2) such error in evaluating the opinion is harmless.

**A. The ALJ's Evaluation of Dr. Powell's Medical Opinion.**

Plaintiff contends that substantial evidence does not support the ALJ's finding that Dr. Powell's opinion has "some persuasiveness" because the ALJ failed to provide an adequate explanation for such conclusion. (Pl.'s Mem. at 5-8). Specifically, Plaintiff argues that the ALJ could not rely on merely one examination in June 2018 to conclude that Dr. Powell's opinion lacked some persuasiveness. (Pl.'s Mem. at 6.) Plaintiff specifically notes that "the ALJ expressly admitted that Dr. Powell's opinions were generally support by Dr. Powell's own finding." (Pl.'s Mem. at 7.)

Defendant argues the ALJ properly evaluated Dr. Powell's opinion. (Def.'s Mem. at 14-21.) Defendant contends that, "even though the limitations found by [Dr. Powell] were generally supported by and consistent with the record," Dr. Powell's finding that Plaintiff had no environmental limitations was inconsistent with Plaintiff's environmentally triggered asthma. (Def.'s Mem. at 13).

Under the SSA regulations, the ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings,

8

diagnosis, treatment prescribed with response, or prognosis." *Id*. §§ 404.1513(a)(3), 416.913(a)(3) (defining these categories of information as "other medical evidence").

Under the regulations,[4] an ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)–(5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how he considered these factors in the written opinion. *Id*. § 416.920c(b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion []" will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion []" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. *Id*. § 416.920c(c)(2).

An ALJ may explain his consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id*. § 416.920c(b)(3). In that situation, an ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id*.

Plaintiff argues that, when rendering Plaintiff's residual functional capacity determination, the ALJ failed to explain or properly articulate the factors and reasons for determining that Dr. Powell's medical opinion had "some persuasiveness." When performing a residual functional

---

[4] Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

9

capacity determination, an ALJ "'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Mascio*, 780 F.3d at 636). Thus, "the ALJ must *both* identify evidence that supports [the] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [the] conclusion." *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). This "narrative discussion" requirement applies to an ALJ's evaluation of medical or expert opinions in the context for formulation a claimant's residual functional capacity. *Id.* at 695.

In the instant case, the ALJ failed to adequately explain why Dr. Powell's opinion only had "some persuasiveness." The ALJ noted that Dr. Powell's opinion was "generally supported by Dr. Powell's own findings and observations" but concluded that Dr. Powell's opinion was not completely consistent with the record. (R. at 21.) To support this inconsistency conclusion, the ALJ noted a June 2018 examination that was "generally unremarkable" regarding Plaintiff's asserted limitations. (R. at 21.) The ALJ further stated that Dr. Powell's opinion that Plaintiff had "no environmental limitations" was inconsistent with Plaintiff going to the emergency department treatment at least twice for environmental asthma exacerbations. (R. at 21.) The ALJ's reasoning is inadequately explained for several reasons. First, the June 2018 examination does not patently contradict Dr. Powell's opinion. The ALJ correctly notes that the June 2018 examination revealed normal findings regarding Plaintiff's nose, chest, heart, musculoskeletal strength, and neurological signs. (R. at 318.) However, notes from that June 2018 visit reveal that Plaintiff's chief complaint was for a sinus problem, along with follow up for homocystinemia. (R. at 318.) Thus, medical providers on that date were primarily examining Plaintiff for causes of her sinus congestion. By contrast, Dr. Powell opined on Plaintiff's ability to walk, sit, lift, carry, and take or forego breaks.

10

(R. at 465-68.) It is not evident to this Court how an examination for a potential sinus infection relates to Plaintiff's ability, to walk, sit, lift, or carry.

Second, the ALJ's principal reliance on the June 2018 examination is insufficient because it represents just one examination on a particular date—a medical snapshot of Plaintiff at a particular time. The ALJ did not reconcile the normal findings from June 2018 with other records in the evidence, such as Plaintiff's April 2019 emergency department visit, which notes Plaintiff had a "oxygen saturation of ninety-nine" and a "diffuse expiratory wheeze." (*See* R. at 18.) Although the ALJ mentioned other normal examinations of Plaintiff's lungs from April 2017, June 2019, August 2019, December 2019, and January 2020, (*see* R. at 18-19), the ALJ did not cite those examinations in concluding that Dr. Powell's opinion was "not completely consistent with the overall record." (R. at 21.)

Third and finally, this Court notes that Defendant does not defend the ALJ's reliance on the June 2018 examination. In its brief, Defendant acknowledged that Dr. Powell's opinion was "generally supported by and consistent with the record." (Def.'s Mem. at 13.) Instead, Defendant attributed the ALJ's "some persuasiveness" conclusion on Dr. Powell's opinion that Plaintiff lacked any environmental limitations. The ALJ, Defendant notes, concluded that Plaintiff did have environmental limitations because of her hospital visits for environmentally triggered asthma episodes. (R. at 21.) While this Court finds that the ALJ adequately explained its disagreement with Dr. Powell's environmental limitation conclusion, the ALJ still relied—at least, in part—on the June 2018 examination to support the persuasiveness level of Dr. Powell, which the ALJ did not adequately explain.

Because the ALJ did not adequately explain its conclusion that Dr. Powell's opinion was partially inconsistent with the overall record, this Court cannot conduct a meaningful review of

11

the level of persuasiveness given to such opinion. The ALJ therefore erred in evaluating Dr. Powell's opinion.

**B. Harmless Error.**

Even if the ALJ erred in evaluating Dr. Powell's opinion, Defendant argues that such error is harmless. (Def.'s Mem. at 14.) Specifically, Defendant asserts that the ALJ's residual functional capacity determination was "*more restrictive*" than Dr. Powell's recommendations. (Def.'s Mem. at 14.) For instance, Defendant asserted that the ALJ determined Plaintiff could stand or walk for six hours with intermittent sitting, while Dr. Powell similarly opined that Plaintiff could stand or walk for six hours with frequent breaks. (Def.'s Mem. at 14.) Although Dr. Powell opined that Plaintiff would need frequent breaks for standing or walking, Defendant contends that the ALJ accounted for such breaks by limiting Plaintiff to walking in 20-minute increments. (Def.'s Mem. at 15-16.)

Plaintiff argues that there is no harmless error because the ALJ did not account for all the limitations opined by Dr. Powell, and the ALJ failed to create a logical bridge when drawing their conclusion. (Pl.'s Reply Br. at 1-3.) Specifically, Plaintiff contends that the ALJ did not incorporate Dr. Powell's limitation that Plaintiff needed frequent breaks from standing or walking. (Pl.'s Reply Br. at 3.) Plaintiff asserts that a limitation of walking in 20-minute increments does not incorporate frequent breaks. (Pl.'s Reply Br. at 3.)

This Court finds that, although the ALJ erred by failing to explain its evaluation of Dr. Powell's opinion, such error is harmless because the ALJ's residual functional capacity incorporated the same or higher levels of limitation as Dr. Powell. Dr. Powell opined that Plaintiff: (1) could walk or stand for up to six hours a day with frequent breaks, (2) could lift or carry up to

20 pounds occasionally and ten pounds frequently, and (3) would have some manipulative limitations with fingering and handling. (R. at 467-68.)

The ALJ's residual functional capacity determination mirrors Dr. Powell's opinion. The ALJ limited Plaintiff to "light work," which limits Plaintiff to: (1) walking or standing for six hours; and (2) lifting no more than 20 pounds and carrying no more than 10 pounds frequently. (R. at 15, citing 20 CFR 404.1567(b) and 416.967(b)) The ALJ added to the "light work" limitations by also limiting Plaintiff to "occasionally fingering on the right dominant side." (R. at 15.) These limitations are nearly identical to Dr. Powell's opinion.

Plaintiff nonetheless argues that the ALJ failed to incorporate Dr. Powell's limitation that Plaintiff needed frequent breaks from walking or standing. As Defendant points out, however, the ALJ added a further limitation to Plaintiff's "light work" designation by stating that Plaintiff could walk only in 20-minute increments. (R. at 15.) This additional limitation accounts for frequent breaks. Walking 20 minutes at a time for a total of six hours in an eight-hour workday implies that Plaintiff would have frequent breaks from walking.

In determining the significance of an error, courts must consider, among other factors, "an estimation of the likelihood that the result would have been different." *Shineski v. Sanders*, 556 U.S. 396, 411 (2009). Further, "where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency 'can decide whether re-consideration is necessary.'" *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Against this standard, the Court concludes that because the ALJ incorporated Dr. Powell's recommended limitations, any error in the ALJ's evaluation of Dr. Powell's opinion is harmless. Accordingly, this Court recommends affirming the final decision of the Commissioner.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 19) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 24) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: January 31, 2022